548

THE NATIONAL CITY BANK OF NEW YORK, Plaintiff and Appellee, *v.* FRANCISCO DE LA TORRE, Defendant and Appellant; and MERCEDES DE LA TORRE ET AL., Defendants.

No. 6418. Argued January 15, 1936.—Decided February 10, 1936.

*L. Muñoz Morales* and *J. Ramírez Santibáñez* for appellant. *Fiddler, Córdova & McConnell* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

After this appeal had been decided by our judgment of February 20, 1935, affirming the judgment appealed from (48 P.R.R. 130), the appellant Francisco de la Torre, on February 28, requested leave to file a motion for reconsideration. He was granted until March 11, and this term was extended to April 10, 1935, when the motion was filed. The

parties were heard on the motion on May 20th following, and they were granted a term to file memoranda, the last of which was presented on January 15, 1936.

We are dealing here with a default judgment. After the defendant, Francisco de la Torre, had been served with the summons he demurred to the complaint and his demurrer was overruled. He then answered. The plaintiff demurred to his answer for failure to state facts sufficient to constitute a defense and the demurrer was sustained, with leave to the defendant to amend his answer within ten days. Nothing was done by the defendant. He did not move for a reconsideration. He did not file an amended complaint. He did not move for judgment on the pleadings. On motion of the plaintiff his default was noted and judgment was rendered against him, said judgment being the one from which he appealed to this court.

The reasons which we had for holding that, as an action for a money judgment upon a contract—a promissory note—was involved, the clerk was authorized to enter judgment, and which led us to the conclusion that the complaint stated facts sufficient to constitute a cause of action, still stand.

With regard to the alleged error committed by the district court in sustaining the demurrer to the answer, we said that given the position taken by the defendant-appellant in the district court, the matter should not even be discussed. However, we stated that after considering the questions raised, we were of the opinion that they were correctly decided by the district court whose reasoned decision we quoted at length. (48 P.R.R. 130.) We still hold the same view in spite of the extraordinary effort made by the appellant to show that our conclusion is erroneous.

We know that for the purpose of the demurrer interposed to the answer the averments made therein must be taken as true; but this does not mean that the court in acting upon such admission, has no power to fix the scope thereof and is bound by some isolated assertion made in the docu-

ment, which in its opinion, is overcome by other facts appearing from the document itself.

■ Upon examining the answer and the deed of mortgage attached thereto, in the light of the holding of this court, among other cases, in *National City Bank of N. Y.* v. *Martinez,* 41 P.R.R. 162, the final conclusion that must be reached, despite any assertion to the contrary, is that the relation of the defendant-appellant towards the defendant-appellee is that of a solidary debtor, jointly bound with the other defendant Mercedes de la Torre.

The holding above referred to is as follows:

"Where a person, to accommodate or benefit others and without actually being a debtor, signs a promissory note as solidary obligor, he thereby establishes in the instrument the law of the contract— with respect to his status as such solidary obligor and not as a surety —as the last expression of the intention of the parties, and he is thereby liable as a debtor *in solidum.*" 41 P.R.R. 162.

But even conceding the correctness of appellant's contention that "the whole juridical basis of this suit essentially rests upon the fact that the defendant herein, Francisco de la Torre, is not a solidary debtor but a solidary surety," it would always have to be concluded that the answer does not state facts sufficient to constitute a meritorious defense.

■■ The appellant invokes section 1751 of the Civil Code (1930 ed.), which provides that "the sureties even when they are joint (solidary) shall be released from the obligation whenever by an act of the creditor they can not be subrogated to the rights, mortgages and privileges of the same," * and cites extensively from the French commentators Colin and Capitant, who, referring to a similar provision of the French Civil Code, state in part, as follows:

"We know that, in practice, a creditor to whom the debtor offers a surety requests the latter in most cases that he bind himself *in*

---

* NOTE.—It is believed that a more adequate translation of the Spanish text of this provision would be as follows: "the sureties, even when they are bound *in solidum,* shall be released from their obligations whenever by reason of any act of the creditor they can not be subrogated to the rights, mortgages, and privileges held by the latter."

*solidum.* As regards debts acknowledged and recognized in commercial instruments, the solidarity of the surety—or the person furnishing the security—is fully established in law by section 142 of the Code of Commerce.

"We have already stated that the effect of this solidarity is to deprive the surety of the right to claim the benefit of the discussion and the benefit of a divided responsibility, but should the solidary surety, as regards the creditor, be considered to occupy a position entirely similar to that of an ordinary debtor *in solidum,* and hence that the rules provided by section 1200 *et seq.,* are applicable to him, thus entirely disregarding the rules contained in the title dealing with 'Suretyship,' or may he on the contrary avail himself, from another standpoint and as regards the creditor, of his status as a *fidejussor?*

"This question presents points of real practical interest. Here are especially two points on which the rules of solidarity and those of suretyship differ:

"          *          *          *          *          *          *          *

"B. As we shall soon see, section 2037, releases the surety from his obligation whenever by reason of an act of the creditor he can not be subrogated to the rights and securities held by the latter.

"This provision, established especially for the benefit of the surety, may not be considered as extending to a codebtor *in solidum,* a principal debtor, who is bound to pay the debt which burdens him as well as his co-obligor. Therefore, should a solidary surety be permitted to invoke said provision or should this benefit be denied to him?

"On this point, both the decisions and textbooks (*doctrina*) are not in accord. Both admit that section 2037 should apply to a solidary surety because suretyship, whatever its modalities, imposes on the creditor the obligation to preserve the securities corresponding to the surety. (Pau, January 21, 1884, D. P. 85, 2. 77, S. 86, 2. 90; Trib. Civ. Beziers, April 9, 1894, in Cas., D. P. 1904, 1. 430, s. 1902, 1. 86.)

"So that solidarity does not deprive the surety of his status as an accessory codebtor in so far as the same may be compatible with the solidary obligation contracted by him. We must conclude, therefore, that a solidary surety may invoke the right of compensation corresponding to the principal debtor, which privilege may not be invoked by a solidary debtor (see sec. 1294, par. 1 and sec. 2036), and that the facts that bar prescription against him are of no effect as regards the principal debtor.

"          *          *          *          *          *          *          *

"EXACT CONDITIONS REQUIRED IN ORDER THAT THE SURETY MAY INVOKE THE DEFENSE OF SUBROGATION.—These conditions are two, viz.:

"1. The creditor must have defaulted in his obligation to preserve the securities given to secure the credit. And it matters little that the loss of the security may be due to a positive act done by him—as, for example, that he should have ordered the cancellation of a mortgage record before he was paid in full or that he should have waived such lien (Civ. Feb. 6, 1911, D.P. 1911, L. 253, S. 1911, L. 501)— or that such loss may be due to mere negligence, as, for example, the failure to renew a record entry.

"*     *     *     *     *     *     *

"2. The creditor's fault must have caused prejudice to the surety. Therefore, if it should be shown that the securities which the creditor has waived were worthless, section 2037 would have no application and it would be incumbent on the surety to prove the prejudice complained of. (See note of Lyon-Caen in S. 96, 1. 65; Req., March 18, 1901, D.P. 1903, 1. 345, S. 1903, 1. 137 Wahl's note; December 2, 1903, D.P. 1905. 1. 9, S. 1908. 1. 138.)." 5. Elementary Course of Civil Law by Ambrosio Colin and H. Capitant, translated into Spanish by Demófilo de Buen, 23, 24, 25, 34, and 35.

The defendant maintains that his answer states facts sufficient to constitute a good defense under the legal provision invoked, as interpreted by Colin and Capitant, since the same alleges that the creditor granted extensions to the debtor in violation of the contract and prevented the surety from being subrogated to the mortgage constituted by the debtor when it tacitly waived that security by bringing this suit and attaching property belonging to the surety to secure the effectiveness of any judgment that might be rendered therein.

Let us consider the matter of the extensions. This defense was pleaded in the answer as follows:

"And the defendant herein further alleges that both the lender American Colonial Bank of Porto Rico and its successor or assignee, plaintiff herein, The National City Bank of New York, subsequently and without the knowledge or consent of this defendant, granted to the borrower, Mercedes de la Torre, extensions for the payment of said loan, without the intervention of any payment of interest and

without any valuable consideration other than such payment of interest. Based thereon this defendant alleges that the undertaking given by him to secure said loan has become totally extinguished.''

As is well known, in the case of a solidary surety an extension does not relieve him of his obligation; but the defendant and appellant argues that, as he alleged in his answer that it was agreed between the parties that extensions could only be granted for a valuable consideration, a different situation is presented.

The only stipulations regarding extensions set forth in the deed of acknowledgment of indebtedness and mortgage, executed subsequent to the promissory note and subsequent to the alleged verbal agreement, by the appellant himself and by Mrs. Mercedes de la Torre, which deed therefore contains the last expression of their will, are as follows:

''THIRD.—In accordance with the terms of the promissory note herein described, the Bank may, at the request of any of the debtors, extend the term of said obligation from month to month, provided interest is paid at the expiration of each month at the agreed rate, or to substitute it for a new obligation, it being enough that in the same it be made to appear that the obligation is also secured by this mortgage under the same conditions, the mortgage to remain always as a collateral security until the obligation is paid, and even though the renewals or new notes exceed the term of one year herein fixed as the term of the mortgage, inasmuch as the latter shall remain in full force securing said debt until fully paid to the Bank.''

In the body of the note it had already been stated that ''we and each of us, hereby agree that the holder of this note may, for any valuable consideration, extend the time of payment thereof, without notifying us, and that we will remain liable thereon thereafter as if we had expressly consented to such extension''; and it was further stated over the sole signature of F. de la Torre that ''I, (we) hereby agree and consent to any extension of time or renewal of the within note and guarantee the payment of the same when due, or at any time thereafter, waiting demand, notice and protest.''

Appellant's contention is not, then, supported by the documents on which his own answer is based. Such support is claimed under a verbal agreement which is alleged as follows:

"And the defendant herein further alleges: that on the said day, after the promissory note had been signed and delivered but before the execution of said deed, he agreed with the lender, American Colonial Bank of Porto Rico, that his status would be that of a solidary surety but subject to a limitation in regard to the extension, the lender binding himself not to grant any extension without the consent of the surety, except such as should be allowed upon the payment of interest and in addition for any valuable consideration."

Conceding that the terms of the promissory note might be varied by a later verbal agreement, such as the one herein alleged, it appears that subsequently thereto, the deed of acknowledgment of indebtedness and mortgage was executed for the reason, among others, as alleged in the answer that the appellant desired "to clearly state in the Spanish language, owing to his lack of familiarity with the English language, his rights and obligations as a surety for said loan." Thus the answer itself overcomes any efficacy that the alleged verbal contract might have, for it must be concluded that the deed subsequently executed contains the last expression of the will of the parties.

Regarding the subrogation, it will suffice to say that in the said deed of acknowledgment of indebtedness and mortgage it was agreed as follows:

"Fourth: The mortgagee Bank reserves the right, in case of default on this obligation, to demand full payment from any of the debtors or from both and to bring judicial proceedings for the recovery of the mortgage, all this at the exclusive option of the Bank, in the order that may be deemed proper by the creditor or to proceed against all the said securities at once."

Therefore, what the plaintiff bank did was to enforce a right which had been expressly acknowledged by the defendant-appellant himself. Moreover, if account is taken of the

stipulations set forth in the third clause of the deed already transcribed, with regard to the continuance of the mortgage, it will be seen that there is no basis for the application of section 1751 of the Civil Code (1930 ed.) which has been invoked.

The motion for reconsideration must be denied.

Mr. Justice Córdova Dávila took no part in the decision of this case.